# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATRINA L. KELLY, BENEFICIARY FOR THE ESTATE OF WILLIAM KELLY,** | : : : : | No. 3:16cv1335 (Judge Munley) |
| **Plaintiff** | : : : | |
| v. | : : : | |
| **LINCOLN BENEFIT LIFE COMPANY,** | : : : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is Defendant Lincoln Benefit Life Company's motion for summary judgment in this case involving a life insurance dispute. The parties have briefed their respective positions, and the motion is ripe for disposition.

**Background** [1]

On October 23, 2013, William Kelly obtained a life insurance policy from defendant with a benefit of $200,000.00 and with Plaintiff Katrina L. Kelly as beneficiary. Approximately ten months later, on August 20, 2014, William Kelly passed away from respiratory failure. Plaintiff made a claim to defendant for the life insurance benefits. Defendant denied the claim. Plaintiff then instituted this case by filing a three-count complaint. The complaint raises the following causes of action: Count I- breach of contract; Count II – bad faith; and Count III – negligent supervision/vicarious liability. At the close of discovery, the defendant

---
[1] For this brief recitation of the background facts, we dispense with citations to the record. Citations to the record will be provided below in the discussion section.

filed the instant motion for summary judgment, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. (Doc. 1, Not. of Removal ¶ 6). Defendant Lincoln Benefit is incorporated under the laws of the State of Nebraska with its principal place of business in Nebraska. (Id. ¶ 7). Thus, defendant is a citizen of Nebraska. Additionally, the amount in controversy exceeds $75,000. (Id. ¶ 9). Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938)).

**Legal standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits,

3

depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

In the motion for summary judgment, the defendant insurance company argues that it properly rescinded the life insurance policy when it learned of inaccuracies in the insurance application. Because defendant properly rescinded the policy, it had no duty to pay benefits and plaintiff's breach of contract fails. The remaining two claims rely on the validity of the breach of contract cause of action. No breach of contract occurred, and thus, according to the defendant, these two claims fail also and judgment should be entered in favor of the defendant.

Defendant raised this issue in its answer to the complaint, stating: "Plaintiff's claims are barred because there were material, knowing and/or fraudulent misrepresentations in the application for the policy, which rendered the policy void and of no force and effect, and [Defendant] Lincoln Benefit properly and timely rescinded and contested the policy." (Doc. 6, Ans. at 5). Defendant argues that William Kelly (hereinafter "Mr. Kelly" or "decedent") failed to disclose an extensive history of medical treatment, including multiple recent hospital visits, and the diagnostic testing for, and diagnosis of, lung cancer. Thus, at issue is whether Mr. Kelly materially misrepresented his health and medical condition

when he purchased the policy and whether such misrepresentation allows defendant to rescind the policy. Plaintiff argues that questions of material fact preclude us from granting summary judgment. After a careful review, we agree with the defendant.

Pennsylvania law allows for rescission of an insurance contract when in applying for a policy an applicant makes a 1) false representation; 2) which the insured knew was false when made or was made in bad faith; and 3) the representation was material to the risk being insured. New York Life Ins. Co. v. Johnson, 923 F.2d 279, 281 (3d Cir. 1991); Estate of Genovese v. AAA Life Ins. Co., No. 3:11cv348, 2011 WL 5835097 *8 (Nov. 21, 2011) .

Defendant argues that all off these elements are met. Plaintiff made false statements, he knew they were false and they were material to the risk being insured. We will address these factors separately.

**A. False representation**

As explained above, the first element that a party must prove to rescind an insurance contract is that the applicant made a false representation. New York Life Ins. Co., 923 F.2d at 281. On the application forms at issue, denials were made with regard to: 1) whether the decedent had been treated or diagnosed with cancer, other than basal skin cancer, in the preceding ten years; 2) whether the decedent had been diagnosed with, or sought treatment or advice for, any

5

lung disorder in the past ten years; 3) whether the decedent had ever been diagnosed with, or sought treatment or advice for cancer or a tumor; and 4) whether in the preceding five years the applicant had a checkup, consultation, hospitalization, illness, surgery or medical or diagnostic test, other than a vasectomy in January 2010 and a routine checkup in October 2013. Defendant argues that these denials are false. Plaintiff evidently agrees that these representations are false. Therefore, the first element is met.

**B. Knowledge of falsity / bad faith**

The second element necessary to rescind an insurance contract is that the insured knew that the statements were false when made or that the statements were made in bad faith. New York Life Ins. Co., 923 F.2d at 281. According to plaintiff, accurate information was provided in applying for the insurance policy and if anything on the application forms is inaccurate, plaintiff's decedent did not put it on the form. Specifically, plaintiff's principal argument is that although Mr. Kelly's signature is on the application, the handwriting elsewhere on the application forms is not his. Thus, the argument is that the applicant did not provide that inaccurate information found in the application.

The law provides that a "party is bound to know what he signs." Applebaum v. Empire State Life Assur. Soc., 166 A. 768, 769 (Pa. 1933) (internal citation omitted). Thus, "[t]he general rule is that one who signs an application for

6

insurance without reading it, when he might have done so will be held to have read it." The Applebaum case is similar to the instant case.

In Applebaum, Louis Applebaum applied for and obtained a life insurance policy. He died seven weeks later of apoplexy. Id. at 768-69. The insurance company refused payment of the benefits. Id. at 769. The insurance company argued that false statements had been made on the insurance policy application and in a medical examiner's report. Id. The insured had signed the application materials several times declaring that the information that was provided was true. Id. Because of the false statements and the insured's signature on the forms, the insurance company argued that its refusal to make payment of the benefits was justified.

The plaintiff in that case attempted to demonstrate that the insured did not fill out the forms himself. Rather, the medical examiner and insurance agent asked him questions and then filled out the forms based on his answers. Id. Although he verbally made correct answers, they recorded the answers on the forms incorrectly according to the plaintiff. Id.

The Pennsylvania Supreme Court ruled against the insured. It held that "one who signs an application for insurance without reading it, when he might have done so, will be held to have read it." Id. Such an "applicant is presumed to know all that a reading of his application would have revealed." Id.

Thus, plaintiff's argument here that the decedent provided truthful information that the insurance agent misrepresented on the application is not convincing. It is without question that Mr. Kelly signed two separate parts of the application, Part I and Part II. His signature appears under the following statement on each part: "I declare that the answers and statements given above are full and correct to the best of my knowledge and belief." (Doc. 18-1, Insurance Application at 8, 11). Thus, as in Applebaum, plaintiff cannot rely on the fact that someone else filled out the forms. Plaintiff's decedent signed the documents, which indicate that information in the forms was accurate.

Plaintiff attempts to create a genuine issue of material fact with the submission of an affidavit. By way of background, in support of its motion for summary judgment, defendant submitted the affidavit of Dolores A. Moyles. (Doc. 20). The affidavit indicates that during the relevant timeframe Moyles worked as a licensed and appointed insurance producer with authorization to sell defendant's products. (Doc. 20, Moyles Aff. ¶ 2). She indicates that she assisted Mr. Kelly in filling out the application at issue, specifically the portions with misstatements in them. (Id. ¶5). She asked Kelly the questions contained in Parts I and II of the application and recorded all the answers that he provided. (Id. ¶¶ 8, 10). She further indicates that Kelly did not share with her any health

conditions or medical information that does not appear on the application. (Id. ¶ 13).

The plaintiff has submitted her own affidavit to counter Moyles' affidavit. In her affidavit, she indicates that no person named Dolores Moyles ever visited her home, where she lived with Mr. Kelly, who was her husband. (Doc. 24-1, Pl.'s Aff. ¶¶ 1, 5). In fact, according to plaintiff, an unnamed gentleman, who identified himself as an agent for defendant, provided Mr. Kelly the questions on Part II of the life insurance application. (Id. ¶ 4). Additionally, to the best of the plaintiff's recollection "every response made by [Mr. Kelly] to the gentleman who asked the questions at our home was truthful and accurate." (Id. ¶ 6).

Plaintiff's position is that her affidavit raises sufficient questions of fact with regard to the issues surrounding the insurance application to render summary judgment inappropriate. We disagree. It is uncontested that the decedent signed the insurance application materials and that the information on the forms was inaccurate. Under Applebaum that is sufficient for the defendant to rescind the insurance policy. It does not matter if the person assisting in filling out the form was an unnamed gentleman or Dolores Moyles.

Thus, the second element of the rescission analysis comes out in defendant's favor.

**C. Materiality**

The final element of the rescission analysis deals with whether the false representations were material to the risk being insured. New York Life Ins. Co., 923 F.2d at 281. If the false statements in an application influence the judgment of the insurer in selling the policy and accepting the risk, then the statements are material. Karcher v. Security Mut. Life Ins. Co., 140 A.2d 852, 854 (Pa. Super. Ct. 1958). If "the statements are palpably and manifestly material to the risk, it is the duty of the court to rule as a matter of law that they are material." Id. Here, the questions dealt with the health of the decedent. In part, he had been diagnosed with lung cancer and did not reveal that fact. In fact, the application claims that Mr. Kelly's last visit to his primary care physician was for a checkup, very close in time to his signing the application, and that the results were normal. (Doc. 18-1, Application). It is not even a close question that the misrepresentations made on Mr. Kelly's application are material to the risk insured against. Plaintiff does not present any argument that the statements were not material. Accordingly, we find that the third element of the rescission analysis should be resolved in favor of the defendant.

**Conclusion**

We find that granting summary judgment in favor of the defendant is appropriate. Defendant claims that it failed to pay life insurance benefits at issue because it had properly rescinded the policy. We find that the rescission was

proper. Materially false statements were made on the application forms. The statements are legally attributable to the decedent, because he signed the forms. Accordingly, the defendant had no duty to pay the insurance benefits and plaintiff's breach of contract claim fails. The plaintiff's other two claims, bad faith and negligent supervision/vicarious liability, are dependent on the breach of contract claim. As no valid breach of contract claim exists, these other two claims also fail. Summary judgment will be granted in favor of the defendant. An appropriate order follows.

**Date: Dec. 18, 2017**  **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**